UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL. NO. 04-10218-RWZ |
| | ) | |
| DUJUANE MCNICKLES | ) | |
| | ) | |

**GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

**I.   Introduction**

The United States of America opposes the defendant's Motion to Suppress because it is without merit as a matter of law. The defendant's motion is based on his assertion that the search warrant affidavit in this case did not establish a sufficient nexus between the defendant's narcotics trafficking and 132 Van Buren Street in New Bedford, the location at which certain contraband was seized pursuant to the search warrant issued by this Court. See defendant's motion at 1, n.1. As discussed below, the search warrant was supported by probable cause to believe that evidence of the defendant's drug dealing would be found at 132 Van Buren Street. Even if the affidavit were not supported by probable cause, the evidence seized would nonetheless be admissible under the good faith exception to the exclusionary rule announced in United States v. Leon, 468 U.S. 897, 920 (1984).

**II.   The Facts**

On June 18, 2004 (Swartwood, M.J.) issued a warrant to search 132 Van Buren Street, New Bedford, Massachusetts."[1] The Affidavit of ATF Special Agent Stephanie Schafer

---

[1] As set forth in the Notice of Filing submitted herewith, copies of the warrant and supporting affidavit are not being filed with the Court electronically; they are being manually filed and are available in paper form only.

supported issuance of the search warrant.  As explained by Special Agent Schafer, 132 Van Buren Street is Apartment 132 in the Presidential Heights Housing Project.  Schafer Affidavit ("Aff.") at ¶ 5.  The affidavit explained that a confidential informant ("CI") provided information that the defendant, Dujuane McNickles, "sells crack cocaine daily in the Presidential Heights Housing Project in New Bedford."  Aff. at ¶ 7.  The CI knows McNickles personally and has seen McNickles sell crack cocaine on numerous occasions.  Id.  The affidavit elaborated by stating that "[a]ccording to the CI, McNickles sells crack cocaine out of 132 Van Buren Street, his girlfriend's apartment, at night and out of 120 Van Buren Street, his sister's apartment, during the day.  Aff. at ¶ 8.

The affidavits described Special Agent Schafer's corroboration of much of the information provided by the CI.  First, the affidavit described the defendant's criminal record:  he was convicted in 2000 in New Bedford District Court for possession of cocaine with intent to distribute and had charges for trafficking cocaine pending against him in Bristol Superior Court.  Id.  Next, Schafer described information that corroborated that Leonora McNickles resides at 120 Van Buren Street.  Aff. at ¶ 9.  Schafer also corroborated that a woman, Alaina Almeida, resides at 132 Van Buren Street.  Id.

Next, under Schafer's supervision, the CI purchased crack cocaine from McNickles on several occasions between April 16 and June 16, 2004.  Aff. at ¶¶ 10-20.  In total, McNickles sold the CI 8.6 grams of crack cocaine.  Id.  The first transaction occurred on April 16, 2004, when the CI bought crack cocaine from McNickles inside 120 Van Buren Street.  Aff. at ¶¶ 11-12.  A videotape of the transaction confirms that it occurred inside 120 Van Buren Street.  Aff. at ¶¶ 13. On the audio recording of the meeting between McNickles and the CI, McNickles is heard

offering to obtain a firearm for the CI.  Id.

The second transaction took place on April 23, 2004.  Aff. at ¶¶ 14-15.  The CI met McNickles in the vicinity of 120 Van Buren Street and purchased crack cocaine from him after the two men jogged to a nearby apartment.  Id.  The third transaction was on May 27, 2004.  Aff. at ¶¶ 17-18.  On that occasion, the CI saw McNickles jogging from 132 Van Buren Street to 120 Van Buren Street and then to a nearby apartment (131 Fillmore Street) where McNickles then sold crack cocaine to the CI.  Aff. at ¶ 18.  During that transaction, McNickles told the CI that if the CI wanted to sell drugs in the project, McNicklesd could facilitate it.  Id.  The fourth transaction occurred on June 14, 2004.  Aff. at ¶ 19.  Again, the CI met with McNickles in the Presidential Heights Housing Project and purchased crack cocaine, which  McNickles  weighed in the CI's presence.  Id.

The fifth and final transaction occurred on June 16, 2004.   Aff. at ¶ 20.  The CI walked into the housing project and waited for McNickles in the vicinity of 132 Van Buren Street.  Id.  Special Agent Schafer observed McNickles walk out of 132 Van Buren Street and meet up with the CI.  Id.  The CI then purchased a quantity of crack cocaine directly from McNickles.  Id.

The search warrant affidavit also included observations drawn from Special Agent Schafer's general training and experience in drug cases – namely, that drug traffickers, inter alia, often use more than one residence to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations in locations that give them ready access to such items and the ability to conceal them from law enforcement authorities (Aff. at ¶ 21(a)) and drug traffickers often carry firearms and often keep firearms in close proximity to their supplies of illegal drugs for the purpose of protecting themselves, their drugs, and their drug proceeds.  Aff. at ¶ 21(g).

Set forth more fully, the affidavit stated the following, based on the affiant's training and experience:

    (a)    Drug traffickers often use more than one residence as "stash houses," i.e. locations to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, which gives them ready access to such items and the ability to conceal them from law enforcement authorities;

    (b)    Drug traffickers often maintain on hand large amounts of United States currency or other negotiable items in order to maintain their ongoing narcotics business and transact the sales of narcotics;

    (c)    Drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, gasoline receipts, money orders, while facilitating the sale of narcotics, and these documents are maintained where the drug trafficker has ready access to them. It is not uncommon that these records are kept and maintained for periods of time which can exceed several years;

    (d)    It is common for persons involved in drug trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of narcotics proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashiers checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the drug traffickers within their residences, businesses or other locations which they maintain dominion and control over, including safety deposit boxes;

    (e)    Drug traffickers commonly maintain addresses and telephone numbers in books and/or papers which reflect names, addresses, and telephone numbers for their associates in the narcotics organization; and

    (f)    Drug traffickers usually keep paraphernalia for packaging, cutting, weighing and distributing the controlled substances; that these items include, but are not limited to, scales, plastic bags, and cutting agents.

    (g)    Drug traffickers often carry firearms and often keep firearms in close proximity to their supplies of illegal drugs for the purpose of protecting themselves, their drugs, and their drug proceeds.

III.    **ARGUMENT**

    A.    **The Schafer Affidavit Provided Probable Cause To Satisfy Nexus Requirement**

It is well-established that the standard applied by the First Circuit in determining the sufficiency of an affidavit is whether the "totality of the circumstances" stated in the search warrant affidavit demonstrates probable cause to search. United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997), citing Illinois v. Gates, 462 U.S. 213, 238 (1983). To establish probable cause for a premises search, a "warrant application must demonstrate probable cause to believe that a particular person has committed a crime – the 'commission element' – and that enumerated evidence relevant to the probable criminality likely is located at the place to be searched – the 'nexus element.'" United States v. Zayas-Diaz, 95 F.3d 105, 110-11 (1st Cir. 1996). In this case, the defendant argues only that the search warrant affidavit fails to satisfy the nexus element. Defendant's motion at 1, n.1. As discussed below, this assertion is baseless.

With regard to the "nexus" element, "the task of a magistrate in determining whether probable cause exists is 'to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999)(quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). In order to establish probable cause, the facts presented to the magistrate need only "warrant a man of reasonable caution to believe that evidence of a crime will be found." Id. In assessing the facts, the magistrate is entitled to accord weight to the experience and opinions of a law enforcement affiant. Id. at 87. The probable cause standard "does not demand showing that such a belief be correct or more likely true than false." Id. (Citation to Texas v. Brown, 460 U.S. 730 (1983) omitted).

In reviewing a challenge such as the defendant's, this Court must accord "considerable deference" to a magistrate's determination that information in a particular affidavit establishes probable cause. Id. The "inquiry is whether the magistrate had a "substantial basis" for concluding that probable cause existed. United States v. Taylor, 985 F.2d 3, 5 (1st Cir. 1993).

The First Circuit has stated that "interpreting a search warrant affidavit in the proper 'commonsense and realistic fashion' may result in the inference of probable cause to believe that criminal objects are located in a particular place, such as a suspect's residence, to which they have not been tied by direct evidence. Feliz, 182 F.3d at 88 (citations omitted); see also United States v. McClellan, 165 F.3d 535, 546 (7th Cir. 1999) (evidence that defendant was a drug dealer sufficient to establish probable cause for a search of his residence).

The First Circuit's opinion in Feliz is dispositive of McNickles's claim here. In Feliz, the district court ruled that the warrant was not supported by probable cause to satisfy the nexus element, but nevertheless denied Feliz's suppression motion based on the "good faith exception" announced in United States v. Leon, 468 U.S. 897, 922 (1984). Feliz, 182 F.3d at 86. The First Circuit reversed the district court's probable cause ruling and upheld the warrant because, it found that the affidavit contained sufficient evidence of probable cause to satisfy the nexus element. Id. at 88. In Feliz, the affidavit contained less direct nexus information – i.e. information connecting the criminal activity to the search premises – than what is set forth in the Schafer affidavit in this case.

In Feliz, the affidavit submitted in support of the search warrant described drug sales by Feliz over a significant period of time and stated that Feliz had discussed with an informant "the possible sale of 1 kilo of cocaine from [the informant] to Feliz." Id. at 85. However, although

the affidavit identified the address of Feliz's apartment, none of drug sales occurred at or near that apartment. Id. at 84 and 87. Nor was there any indication that either of the two informants who had purchased drugs from Feliz had ever been in Feliz's apartment. Id. at 84-85. Like the affidavit by Special Agent Schafer in this case, the affidavit in Feliz set forth the affiant's experience and his opinion that it is common for drug dealers to have evidence of their drug dealing at their residences. Id. at 85. In reversing the district court's probable cause ruling and rejecting Feliz's argument that the affidavit did not satisfy the nexus requirement, the First Circuit stated that "practical, commonsense assessment, providing a substantial basis for the magistrate's finding of probable cause, is what is called for." Id. at 85 (citations omitted). The Court then explained that

> [i]n addition to [the affiant's] experience and opinions, to which the magistrate was entitled to accord some weight . . . the affidavit presents facts from which a reasonable inference could be drawn as to the probable presence of incriminating evidence at Feliz's apartment. CI, whose information was corroborated by Agent Dumas, identified Feliz as a long-time, successful, drug trafficker. It could reasonably be supposed that a regular trafficker like Feliz possessed documents showing the names and telephone numbers of customers and suppliers as well as accounts showing the monies paid and collected. It was also reasonable to suppose that he kept the money he collected and used in his business in some safe yet accessible place. The affidavit indicated that Felix resided in apartment # 1006 at 401 Cumberland Avenue, Portland. No other residence or drug-dealing headquarters of his was identified in the affidavit. It followed that a likely place to seek to find incriminating items would be Feliz's residence. See, e.g., United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986) (stating that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live"). If he did not maintain his accounts and records, and the presumably large sums of money received in the course of his dealings, at his apartment, where else would he keep them?

Id. (citations and internal quotation marks omitted).

Measured against the yardstick of Feliz, the facts set forth in Special Agent Schafer's affidavit were more than sufficient to satisfy the nexus element. As in Feliz, the affidavit in this

7

case provided ample information of drug dealing by the defendant. The CI in this case knows McNickles personally and knew him to, "sell[] crack cocaine daily in the Presidential Heights Housing Project in New Bedford." Aff. at ¶ 7. The CI has seen McNickles sell crack cocaine on numerous occasions. Id. Going further that the affiant in Feliz, Special Agent Schafer personally supervised the CI in making several controlled drug purchases from McNickles. During the course of these transactions, McNickles offered to help the CI become a drug dealer in the housing project (Aff. at ¶ 8) and offered to obtain a firearm for the CI. Id. at ¶ 13. In addition, the CI informed Schafer that "McNickles [sold]s crack cocaine out of 132 Van Buren Street . . . at night and out of 120 Van Buren Street . . . during the day. Aff. at ¶ 8. Underscoring the strength of the nexus determination in this case, the CI bought drugs from McNickles at both 120 and 132 Van Buren Street. Aff. at ¶ 11-12 and 20. Indeed, Special Agent Schafer personally saw McNickles walk out of 132 Van Buren Street on the occasion of the last controlled purchase, two days before the Court issued the warrant.

      The facts set forth in Special Agent Schafer's affidavit thus make a stronger and more direct showing of a nexus between the criminal conduct and the search premises than that made in Feliz. The CI, who is personally acquainted with McNickles, reported that McNickles spent his days at 120 Van Buren and his nights at 132 Van Buren. The affiant saw McNickles emerge from 132 Van Buren immediately before one of his drug sales to the CI. Another of the drug sales took place inside 120 Van Buren. Hence, as distinct from Feliz, the probable cause finding in this case was supported by direct evidence of drug dealing from the search premises.

      Moreover, as in Feliz, the search warrant affidavit here included observations drawn from the affiant's training and experience, which observations the Court found relevant to the probable

cause determination. These included observations that drug traffickers, inter alia, often use more than one residence to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations in locations that give them ready access to such items and the ability to conceal them from law enforcement authorities (Aff. at ¶ 21(a)) and drug traffickers often carry firearms and often keep firearms in close proximity to their supplies of illegal drugs for the purpose of protecting themselves, their drugs, and their drug proceeds. Aff. at ¶ 21(g). These observations, viewed in conjunction with a "practical, commonsense" assessment of the facts – including the CI's statements about drug sales by McNickles, the several supervised controlled purchases, and McNickles offer to help the CI obtain a firearm and become a crack dealer– provided the magistrate with a substantial basis to find probable cause that McNickles was engaged in an ongoing business of drug dealing and that evidence of that drug dealing would be found at his usual places of residence, which included 132 Van Buren

For these reasons, the Court should deny the defendant's Motion to Suppress.

    **B.**    **Assuming Arguendo That The Warrant Lacked Probable Cause, Evidence Seized Is Nonetheless Admissible Under the *Leon* Good Faith Exception.**

In United States v. Leon, 468 U.S. 897 (1984) the Supreme Court held that even in the absence of probable cause, the exclusionary rule should apply only where excluding evidence would have a substantial deterrent effect on the police. See 468 U.S. at 922 (1984); and United States v. Vigeant, 176 F.3d 565, 571. (1st Cir. 1999). Thus, even where a warrant was not supported by probable cause, evidence should not be suppressed where the executing officers reasonably relied in good faith on a facially valid warrant. See United States v. Owens, 167 F.3d

739, 747 (1st Cir. 1999).[2]  The Supreme Court identified four specific situations where the exception will not apply: (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate failed to act in a neutral and detached fashion and merely served as a rubber stamp for the police; (3) where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or where the warrant application was supported by nothing more than a bare bones affidavit; or (4) where the warrant was facially deficient in that it failed to particularize the place to be searched or the things to be seized.  Id. at 914-15, 923.  Because record does not support a finding, and the defendant does not suggest, that any of these situations is present here, the Leon good faith exception applies in this case.

## CONCLUSION

For the foregoing reasons, the Court should deny the defendant's Motion To Suppress.

                                            Respectfully submitted,

                                            MICHAEL J. SULLIVAN
                                            United States Attorney

By:    /s/ John A. Capin

                                            _____
                                            JOHN A. CAPIN
                                            Assistant U.S. Attorney
                                            (617) 748-3264

---

[2] This Court has discretion to consider the issue of officers' good faith and uphold the warrant on that basis, without first addressing Fourth Amendment issue.  Feliz, 182 F.3d at 86 (citing Leon, 468 U.S. at 925).