UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL. NO. 04-10218-RWZ |
| | ) | |
| DUJUANE MCNICKLES | ) | |
| | ) | |

## <u>NOTICE OF FILING WITH THE CLERK'S OFFICE</u>

Notice is hereby given that the attachments listed below to the <u>Government's Opposition to</u> <u>Defendants' Motions To Suppress Evidence</u> have been manually filed with the Court and are available in paper form only:

Attachment A: Search Warrant

Attachment B: Application and Affidavit for Search Warrant

The government has previously provided copies of these attachments to the defendant in hard copy.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    /s/ John A. Capin

JOHN A. CAPIN
Assistant U.S. Attorney

# ATTACHMENT  A

# UNITED STATES DISTRICT COURT

### DISTRICT OF MASSACHUSETTS

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

132 Van Buren Street, New Bedford, Massachusetts, which is
further described in Schedule B hereto, and all
appurtenances thereto and all areas within the curtilage
thereof

## SEARCH WARRANT

CASE NUMBER: 04-1775-CBS

TO: _____ Stephanie Schafer _____ and any Authorized Officer of the United States

Affidavit(s) having been made before me by _____ Special Agent, ATF _____ who has reason to

Affiant

believe that ☐ ~~on the person of~~ ☒ on the premises known as (name, description and/or location)

132 Van Buren Street, Massachusetts, which is further described on Schedule B attached hereto

in the _____ District of _____ MASSACHUSETTS _____ there is now

concealed a certain person or property, namely (describe the person or property)

See Schedule C attached hereto: such property constitutes evidence of criminal offenses, contraband, the fruits of crime, and things
otherwise criminal possessed.

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the ~~person or~~ property
so described is now concealed on the ~~person or~~ premises above-described and establish grounds for the issuance of this
warrant.

YOU ARE HEREBY COMMANDED to search on or before _____ 06-27-2004 _____

Date

(not to exceed 10 days) the ~~person or~~ place named above for the ~~person or~~ property specified, serving this warrant and
making the search (in the daytime -- 6:00 A.M. to 10:00 P.M.) ~~(at any time in the day or night as I find reasonable cause has been established)~~ and if the ~~person or~~ property be found there to seize same, leaving a copy of this warrant and
receipt for the ~~person or~~ property taken, and prepare a written inventory of the ~~person or~~ property seized and promptly
return this warrant to _____ CHARLES B. SWARTWOOD, IIII, UNITED STATES MAGISTRATE JUDGE

as required by law.                                          U.S. Judge or Magistrate Judge

6-18-04 @ 12:05 pm                    at    BOSTON, MASSACHUSETTS
Date and Time Issued                        City and State

CHARLES B. SWARTWOOD, III
UNITED STATES MAGISTRATE JUDGE                Signature of Judicial Officer
Name and Title of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## SCHEDULE B

The premises to be searched are located at 132 Van Buren Street, New Bedford, Massachusetts and include all appurtenances thereto and all areas within the curtilage thereof.    The premises are more particularly described as follows:

Apartment 132 in the Presidential Heights Housing Project.    The building containing Apartment 132 is the third building on Van Buren Street east of Mount Pleasant Street. Apartment 132 is a two-story apartment with two entrances, a front and back door, both on the first floor.    The bottom floor of the building is brick and the top is tan clapboard with shingles.    The number "132" is posted above both entrance doors.    There are three concrete steps with black hand rails on each side leading up to the front door, which is on the east side of the building.

SCHEDULE C

The property for which this warrant authorizes search and seizure is as follows:

(a) Narcotic drugs and controlled substances, or any residue thereof, drug paraphernalia, scales, measuring devices and weighing devices, narcotics diluting or cutting agents, narcotics packaging materials, plastic wrap, foil, cellophane, jars, plastic bags, containers, or any other items used in the processing of narcotics;

(b) Cash derived from the sale of controlled substances in violation of Title 21, United States Code, Section 841;

(c) Narcotics or money ledgers, narcotics distribution or customer lists, for the period from June 1, 2003 through the date the search warrant is executed, including but not limited to, pay/owe sheets, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, and/or times when narcotics were obtained, transferred, sold, distributed, and/or concealed;

(d) Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records, and other documents, for the period from June 1, 2003 through the date the search warrant is executed, indicating money which may have been generated from the sale of narcotics in violation of Title 21, United States Code, Section 841;

(e) Telephone paging devices, beepers, mobile phones, car phones, and other communication devices which evidence participation in a conspiracy to distribute controlled substances in violation of Title 21, United States Code, Section 841;

(f) Personal telephone and address books and . listings, letters, cables, telegrams, telephone

bills, personal notes and other items, for the period from June 1, 2003 through the date the search warrant is executed, reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking;

(g)   Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including traveler's checks, bonds, stock certificates, cashier's checks, and certificates of deposit; money counting machines; money wrappers and rubber bands, boxes, bags, briefcases, suitcases, or containers used to carry controlled substances;

(h)   Records, documents and deeds, for the period from June 1, 2003 through the date the search warrant is executed, reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items, obtained with the proceeds of the sales of controlled substances;

(i)   Records, items, and documents, for the period from June 1, 2003 through the date the search warrant is executed, reflecting travel for the purpose of participating in narcotics trafficking, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to locations;

(j)   Indicia of occupancy, residency or ownership of the premises and things described in this warrant, for the period from June 1, 2003 through the date the search warrant is executed, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents, canceled envelopes and keys and bank account records;

(k)   Handguns, shotguns, and other firearms, and ammunition, which may be used to facilitate the distribution or possession of, with intent to distribute, controlled substances, and any documents indicating the acquisition or ownership thereof.

# ATTACHMENT B

AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

### DISTRICT OF ___MASSACHUSETTS___

In the Matter of the Search of

(Name, address or brief description of person, property or premises to be searched)

132 Van Buren Street, New Bedford, MA, which is further

described in Schedule B hereto, and all appurtenances

thereto and all areas within the curtilage thereof

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER: __04-1775-CBS__

I _____ Stephanie Schafer _____ being duly sworn depose and say:

I am a(n) _____ Special Agent, ATF _____ and have reason to believe

Official Title

that ☐ ~~on the person of~~ ☒ on the property or premises known as (name, description and/or location)

132 Van Buren Street, New Bedford, Massachusetts, which is further described on Schedule B attached hereto

in the _____ District of _____ MASSACHUSETTS _____

there is now concealed a certain ~~person or~~ property, namely (describe the person or property to be seized)

See Schedule C attached hereto

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

evidence of criminal offenses, contraband, and fruits of crime, and things otherwise criminal possessed

concerning a violation of Title ___21___ United States code, Section(s) _____ 841(a)(1) _____.

The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   ☒ Yes  ☐ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

___6-18-04___   at   BOSTON, MASSACHUSETTS

Date                          City and State

_____

CHARLES B. SWARTWOOD, III, U.S. MAGISTRATE JUDGE   Signature of Judicial Officer

Name and Title of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

AFFIDAVIT OF STEPHANIE SCHAFER  04-1775-CBS

I, Stephanie Schafer, being duly sworn, do depose and state that:

## I.    INTRODUCTION

1.    I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed for approximately four and a half years.  I am currently assigned to Boston Group IV, which investigates firearms related activities in the eastern portion of Massachusetts.

2.    This affidavit is made in support of applications for search warrants seeking evidence of violations of Title 21, Section 841(a)(1) at two locations: 120 Van Buren Street and 132 Van Buren Street, both in New Bedford, Massachusetts, all appurtenances thereto and all areas within the curtilage of each location.  As a result of my participation in firearms investigations and training I have received as an ATF Special Agent, I am familiar with federal narcotics laws and know that it is a violation of 21 U.S.C. 841(a)(1) for any person to possess narcotics with the intent to distribute them.

3.    This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers, as well as information provided by a confidential informant.  The opinions I have formed and set forth in this affidavit are based

upon my training and experience and consultation with other experienced investigators and agents. In submitting this affidavit, I have not included each and every fact known to me about the investigation, but only those facts that I believe are necessary to establish the requisite probable cause.

II. **DESCRIPTION OF PREMISES**:

    A.    **120 Van Buren Street**

4.    120 Van Buren Street, New Bedford, Massachusetts is Apartment 120 in the Presidential Heights Housing Project. The building containing Apartment 120 is the fourth building on Van Buren Street east of Mount Pleasant Street. Apartment 120 is a two-story apartment with two entrances, a front and back door, both on the first floor. The bottom floor of the building is brick and the top is gray clapboard with shingles. The number "120" is posted above both entrance doors. There are three concrete steps with black hand rails on each side leading up to the front door, which is on the west side of the building.

    B.    **132 Van Buren Street**

5.    132 Van Buren Street, New Bedford, Massachusetts is Apartment 132 in the Presidential Heights Housing Project. The building containing Apartment 132 is the third building on Van Buren Street east of Mount Pleasant Street. Apartment 132 is a two-story apartment with two entrances, a front and back door,

both on the first floor.  The bottom floor of the building is

brick and the top is tan clapboard with shingles.  The number

"132" is posted above both entrance doors.  There are three

concrete steps with black hand rails on each side leading up to

the front door, which is on the east side of the building.

III. ITEMS TO BE SEIZED

6.    I seek a search warrant for the above-described premises

because I believe probable cause exists to conclude that there is

presently located within said premises the following, which is

property that constitutes evidence of the commission of a

criminal offense, contraband, fruits of crime, and things

otherwise criminally possessed, and property that is intended for

use or has been used as a means of committing a criminal offense:

> a)    Narcotic drugs and controlled substances, or any
>
>        residue thereof, drug paraphernalia, scales,
>
>        measuring devices and weighing devices, narcotics
>
>        diluting or cutting agents, narcotics packaging
>
>        materials, plastic wrap, foil, cellophane, jars,
>
>        plastic bags, containers, or any other items used
>
>        in the processing of narcotics;
>
> (b)    Cash derived from the sale of controlled
>
>        substances in violation of Title 21, United States
>
>        Code, Section 841;

3

(c)     Narcotics or money ledgers, narcotics distribution

or customer lists, for the period from June 1, 2003

through the date the search warrant is executed,

including but not limited to, pay/owe sheets,

narcotics supplier lists, correspondence,

notations, logs, receipts, journals, books,

records, and other documents noting the price,

quantity, and/or times when narcotics were

obtained, transferred, sold, distributed, and/or

concealed;

(d)     Bank account records, wire transfer records, bank

statements, safe deposit box keys and records,

money wrappers, rubber bands, money containers,

financial records, and other documents, for the

period from June 1, 2003 through the date the

search warrant is executed, indicating money which

may have been generated from the sale of narcotics

in violation of Title 21, United States Code,

Section 841;

(e)     Telephone paging devices, beepers, mobile phones,

car phones, and other communication devices which

evidence participation in a conspiracy to

distribute controlled substances in violation of

4

Title 21, United States Code, Section 841;

(f)     Personal telephone and address books and listings,

letters, cables, telegrams, telephone bills,

personal notes and other items, for the period from

June 1, 2003 through the date the search warrant is

executed, reflecting names, addresses, telephone

numbers, communications, and illegal activities of

associates in drug trafficking;

(g)     Financial instruments purchased with large amounts

of currency derived from the sale of controlled

substances, including traveler's checks, bonds,

stock certificates, cashier's checks, and

certificates of deposit; money counting machines;

money wrappers and rubber bands, boxes, bags,

briefcases, suitcases, or containers used to carry

controlled substances;

(h)     Records, documents and deeds, for the period from

June 1, 2003 through the date the search warrant is

executed, reflecting the purchase or lease of real

estate, vehicles, precious metals, jewelry, or

other items, obtained with the proceeds of the

sales of controlled substances;

(i)     Records, items, and documents, for the period from

5

June 1, 2003 through the date the search warrant is

executed, reflecting travel for the purpose of

participating in narcotics trafficking, including

airline tickets, credit card receipts, travel

vouchers, hotel and restaurant receipts, canceled

checks, maps and written directions to locations;

(j)    Indicia of occupancy, residency or ownership of the

premises and things described in this warrant, for

the period from June 1, 2003 through the date the

search warrant is executed, including utility

bills, telephone bills, loan payment receipts, rent

receipts, trust deeds, lease or rental agreements,

escrow documents, canceled envelopes and keys and

bank account records;

(k)    Handguns, shotguns, and other firearms, and

ammunition, which may be used to facilitate the

distribution or possession of, with intent to

distribute, controlled substances, and any

documents indicating the acquisition or ownership

thereof.

## IV.  BACKGROUND

7.    According to a confidential informant ("CI") who, based

on information provided during the course of this investigation,

has shown himself[1] to be reliable, Dujuane McNickles ("McNickles") sells crack cocaine daily in the Presidential Heights Housing Project in New Bedford.  The CI knows McNickles personally and has seen McNickles  sell crack cocaine on numerous occasions.  The CI has previously been convicted of assault and battery, assault and battery with a dangerous weapon, assault to rape, injuring/burning a penal institution building, larceny, and receiving stolen property.

8.    According to the CI, McNickles sells crack cocaine out of 132 Van Buren Street, New Bedford, Massachusetts at night. According to the CI, that apartment is occupied by McNickles's girlfriend.  According to the CI, McNickles sells crack out of his sister's apartment, 120 Van Buren Street, New Bedford, during the day time.  I have reviewed McNickles's criminal record; he was convicted in 2000 in New Bedford District Court for possession of cocaine with intent to distribute.  Moreover, charges for trafficking cocaine are currently pending against McNickles in Bristol Superior Court.

9.    Information provided by the New Bedford Housing authority reveals that 120 Van Buren Street is rented to Leonora McNickles, date of birth 3/9/77, and has been so occupied since

---

[1] For the purposes of this affidavit, it will be assumed that the CI is a man.

7

December, 1997.  A similar check was conducted for 132 Van Buren

Street that disclosed that Alaina Almeida, date of birth 3/19/83

rents this unit and has done so since 2002.

10.    As described in more detail below, the CI has conducted

controlled buys of crack cocaine at both 120 and 132 Van Buren

Street.  Specifically, on April 16, 2004, the CI bought crack

cocaine from McNickles inside 120 Van Buren Street.  On April 23,

2004; May 27, 2004, June 14, 2004, the CI met McNickles in the

vicinity of 120 Van Buren Street and purchased crack cocaine from

him.  On June 16, 2004, the CI bought crack cocaine from McNickles

at 132 Van Buren Street.  On each date, except for May 27,

preliminary testing on the substance indicated the presence of

cocaine.  The Massachusetts State Laboratory has certified that

the substance purchased from McNickles on April 16 and 23

contained crack cocaine.

**V.    DETAILS OF CRIMINAL CONDUCT**

**Controlled Buy on April 16, 2004**

11.    On April 16, 2004 this CI was searched by Sgt. Paul

Oliveira of the New Bedford Police Department prior to being

outfitted with electronic monitoring and recording equipment.

The CI was given $100 in agent cashier funds.  The CI was driven

to a pay phone in the vicinity of the Presidential Heights

Housing Project in New Bedford.  The CI then placed a telephone

call to McNickles and told McNickles that the CI was on his way

to meet with McNickles.  The CI was observed walking into the

Presidential Heights Housing Project and walking in the vicinity

of 120 Van Buren Street.  Video surveillance showed the CI enter

120 Van Buren Street.  A few minutes later the CI was observed

walking back in the direction of the pay phone.  Sgt. Oliveira

then obtained 5 plastic baggies containing crack cocaine from the

CI that the CI indicated he had purchased directly from

McNickles.  The total weight of the crack cocaine was

approximately .9g.

12.    I debriefed the CI and he indicated that he had gone

into 120 Van Buren Street, an apartment in the Presidential

Heights Housing Project, and met with McNickles.  The CI

indicated that McNickles already had the $100 worth of crack (5

baggies) laying out for the CI on a table when the CI arrived.

The CI indicated that he gave McNickles the $100 for the crack

and then engaged McNickles in conversation about a future firearm

purchase from McNickles.

13.    A videotape of this transaction confirms that the CI did

enter 120 Van Buren Street and make the purchase from McNickles.

I have seen a photograph of McNickles and observed him on the

video recording during the drug deal.  I also heard McNickles on

the audio recording offer to obtain a firearm for the CI.

9

**Controlled Buy on April 23, 2004**

14. On April 23, 2004 the CI was searched by Sgt. Paul
Oliveira of the New Bedford Police Department prior to being
outfitted with electronic monitoring and recording equipment.
The CI was given $100 in agent cashier funds.  The CI was driven
to a pay phone in the vicinity of the Presidential Heights
Housing Project in New Bedford.  The CI then placed a telephone
call to McNickles and told McNickles that the CI was on his way
to meet with McNickles.  The CI was observed walking into
Presidential Heights Housing Project and meeting with a male in a
white t-shirt in the vicinity of 120 Van Buren Street.  The CI
was then observed jogging with the male in the white t-shirt
towards another apartment in the projects.  A short while later
the CI was observed departing the area of the other apartment and
leaving the project.  The CI was then picked up by Sgt. Oliveira,
to whom the CI gave 4 plastic baggies containing a total of
approximately .8g of crack cocaine.  The CI indicated he had
purchased the crack directly from McNickles.

15. I debriefed the CI and he told me that, as he walked
toward 120 Van Buren Street, he encountered McNickles outside.
McNickles then told the CI to go with him to another apartment
nearby.  The CI jogged with McNickles to the other apartment, 131
Fillmore Street, and the purchase of the crack occurred outside

10

that apartment.

16.    Reviewing the video of this transaction, I confirmed that the CI met with McNickles, who was wearing a white t-shirt, and then jogged to 131 Fillmore Street, where the transaction occurred on the front porch.

**Controlled Buy on May 27, 2004**

17.    On May 27, 2004 the CI was searched by Sgt. Oliveira prior to being outfitted with electronic monitoring and recording equipment.  The CI was given $260 in agent cashier funds.  The CI was driven to a pay phone in the vicinity of the Presidential Heights Housing Project in New Bedford.  The CI then placed a telephone call to McNickles and said that he was on the way to meet McNickles.  The CI was observed walking into the projects and meeting with McNickles outside of 131 Fillmore Street.  A short while later the CI was observed departing the area and leaving the project.  The CI was then picked up by Sgt. Oliveira, to whom he gave four plastic baggies containing a total of 2.6g of what appeared to be crack cocaine (The laboratory test results for this controlled buy are not yet available.) The CI indicated he had purchased the suspected crack directly from McNickles.

18.    I debriefed the CI and he indicated that he waited for McNickles outside of 131 Fillmore Street and met McNickles outside.  The CI indicated that he saw McNickles jogging from

11

McNickles's girlfriend's apartment (132 Van Buren Street) to his sister's apartment (120 Van Buren Street) and then jogging to 131 Fillmore Street to meet up with the CI. The CI also engaged McNickles in conversation about McNickles's drug business in the Presidential Heights housing project. McNickles told the CI that if the CI wanted to sell drugs in the project, McNickles could facilitate it.

**Controlled Buy on June 14, 2004**

19.    On June 14, 2004 this CI was searched by Special Agent Robert White prior to being outfitted with electronic monitoring and recording equipment. The CI was given $220 in agent cashier funds. The CI was driven to a pay phone in the vicinity of the Presidential Heights Housing Project in New Bedford. The CI then placed a telephone call to McNickles and said that he was on the way to meet McNickles. The CI was observed walking into the projects and meeting up with McNickles inside 131 Fillmore Street in the projects. A short while later the CI was observed departing the area and leaving the project. The CI met up with this affiant and turned over a plastic baggie filled with an off-white hard substance, that appeared to be crack cocaine. Preliminary tests indicated that the substance contained cocaine. The total weight of the substance was approximately 3.3g. The CI indicated he had purchased the crack directly from McNickles and

12

that McNickles had weighed the crack using a scale, in the CI's

presence.

**Controlled Buy on June 16, 2004**

20.   Cn June 16, 2004, the CI was searched by Sgt. Oliveira

prior to being outfitted with electronic monitoring and recording

equipment.   The CI was given $100 in agent cashier funds.   The CI

was driven to the Presidential Heights Housing Project in New

Bedford.   The CI then placed a telephone call to McNickles and

said that he was on the way to meet McNickles.   The CI was

observed walking into the projects and waiting for McNickles in

the vicinity of 132 Van Buren Street, where the CI indicates

McNickles deals crack late at night.   This affiant then observed

McNickles exit 132 Van Buren Street and meet up with the CI.   A

short while later the CI was observed departing the area and

leaving the project.   The CI was then picked up by Sgt. Oliveira,

to whom he gave two plastic baggies containing what appeared to

be crack cocaine.   The weight of the material was approximately

.9g.   Preliminary tests indicated that the substance contained

cocaine.   The CI indicated that he purchased the crack directly

from McNickles.

21.   Based on my training and experience in connection with

narcotics investigations, I know the following to be true:

              (a)   Drug traffickers often use more than one residence

13

as "stash houses," i.e. locations to secrete

contraband, proceeds of drug sales, and records of

drug transactions in secure locations within their

residences, which gives them ready access to such

items and the ability to conceal them from law

enforcement authorities;

(b)   Drug traffickers often maintain on hand large

amounts of United States currency or other

negotiable items in order to maintain their ongoing

narcotics business and transact the sales of

narcotics;

(c)   Drug traffickers maintain books, records, receipts,

notes, ledgers, airline tickets, gasoline receipts,

money orders, while facilitating the sale of

narcotics, and these documents are maintained where

the drug trafficker has ready access to them.  It

is not uncommon that these records are kept and

maintained for periods of time which can exceed

several years;

(d)   It is common for persons involved in drug

trafficking to maintain evidence pertaining to

their obtaining, secreting, transfer, concealment

and/or expenditure of narcotics proceeds, such as:

14

currency, financial instruments, precious metals
and gemstones, jewelry, books, records, invoices,
receipts, records of real estate transactions, bank
statements and related records, passbooks, money
drafts, letters of credit, money orders, bank
drafts, cashiers checks, bank checks, safe deposit
box keys and money wrappers.  These items are
maintained by the drug traffickers within their
residences, businesses or other locations which
they maintain dominion and control over, including
safety deposit boxes;

(e)    Drug traffickers commonly maintain addresses and
telephone numbers in books and/or papers which
reflect names, addresses, and telephone numbers for
their associates in the narcotics organization; and

(f)    Drug traffickers usually keep paraphernalia for
packaging, cutting, weighing and distributing the
controlled substances; that these items include,
but are not limited to, scales, plastic bags, and
cutting agents.

(g)    Drug traffickers often carry firearms and often
keep firearms in close proximity to their supplies
of illegal drugs for the purpose of protecting

15

themselves, their drugs, and their drug proceeds.

22.    Based on the facts set forth above, I believe there is probable cause to believe that the property sought to be seized, which is listed and described in paragraph 6 above and Schedule C attached hereto, is located at 120 Van Buren Street, New Bedford, Massachusetts, which premises are more particularly described in paragraph 4 above and Schedule A attached hereto, and at 132 Van Buren Street, New Bedford, Massachusetts, which premises are more particularly described in paragraph 5 above and Schedule B attached hereto, and constitutes evidence of the commission of a criminal offense and contraband, the fruits of crime, and things otherwise criminally possessed, and property designed and intended for use and which is and has been used as the means for committing criminal offenses, in violation of Title 21, United States Code, Section 841 (a)(1).

Stephanie Schafer
Special Agent, Bureau of
Alcohol, Tobacco, Firearms and
Explosives

Sworn to and subscribed before me this 18th day of June, 2004.

CHARLES B. SWARTWOOD III
United States Magistrate Judge

16

## SCHEDULE B

The premises to be searched are located at 132 Van Buren
Street, New Bedford, Massachusetts and include all
appurtenances thereto and all areas within the curtilage
thereof.    The premises are more particularly described as
follows:

Apartment 132 in the Presidential Heights Housing
Project.    The building containing Apartment 132 is the third
building on Van Buren Street east of Mount Pleasant Street.
Apartment 132 is a two-story apartment with two entrances, a
front and back door, both on the first floor.    The bottom
floor of the building is brick and the top is tan clapboard
with shingles.    The number "132" is posted above both entrance
doors.    There are three concrete steps with black hand rails
on each side leading up to the front door, which is on the
east side of the building.

SCHEDULE C

The property for which this warrant authorizes search and
seizure is as follows:

(a)   Narcotic drugs and controlled substances, or any
      residue thereof, drug paraphernalia, scales,
      measuring devices and weighing devices,
      narcotics diluting or cutting agents, narcotics
      packaging materials, plastic wrap, foil,
      cellophane, jars, plastic bags, containers, or
      any other items used in the processing of
      narcotics;

(b)   Cash derived from the sale of controlled
      substances in violation of Title 21, United
      States Code, Section 841;

(c)   Narcotics or money ledgers, narcotics
      distribution or customer lists, for the period
      from June 1, 2003 through the date the search
      warrant is executed, including but not limited
      to, pay/owe sheets, narcotics supplier lists,
      correspondence, notations, logs, receipts,
      journals, books, records, and other documents
      noting the price, quantity, and/or times when
      narcotics were obtained, transferred, sold,
      distributed, and/or concealed;

(d)   Bank account records, wire transfer records,
      bank statements, safe deposit box keys and
      records, money wrappers, rubber bands, money
      containers, financial records, and other
      documents, for the period from June 1, 2003
      through the date the search warrant is executed,
      indicating money which may have been generated
      from the sale of narcotics in violation of Title
      21, United States Code, Section 841;

(e)   Telephone paging devices, beepers, mobile
      phones, car phones, and other communication
      devices which evidence participation in a
      conspiracy to distribute controlled substances
      in violation of Title 21, United States Code,
      Section 841;

(f)   Personal telephone and address books and
      listings, letters, cables, telegrams, telephone

bills, personal notes and other items, for the period from June 1, 2003 through the date the search warrant is executed, reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking;

(g)   Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including traveler's checks, bonds, stock certificates, cashier's checks, and certificates of deposit; money counting machines; money wrappers and rubber bands, boxes, bags, briefcases, suitcases, or containers used to carry controlled substances;

(h)   Records, documents and deeds, for the period from June 1, 2003 through the date the search warrant is executed, reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items, obtained with the proceeds of the sales of controlled substances;

(i)   Records, items, and documents, for the period from June 1, 2003 through the date the search warrant is executed, reflecting travel for the purpose of participating in narcotics trafficking, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to locations;

(j)   Indicia of occupancy, residency or ownership of the premises and things described in this warrant, for the period from June 1, 2003 through the date the search warrant is executed, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents, canceled envelopes and keys and bank account records;

(k)   Handguns, shotguns, and other firearms, and ammunition, which may be used to facilitate the distribution or possession of, with intent to distribute, controlled substances, and any documents indicating the acquisition or ownership thereof.