UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | No. 04-10218-RWZ |
| ) | |
| DUJUANE MCNICKLES ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS**

The defendant, Dujuane McNickles, hereby replies to the government's opposition to his motion to suppress all evidence seized as a result of a defective search warrant (hereinafter "Gov. Mem.").[1]

**Probable Cause**

The warrant was defective because the affidavit was based on insufficient and untrustworthy information. The defendant understands, as the government points out, that probable cause does not demand a showing that the affiant's beliefs were correct or "more likely true than false." United States v. Feliz, 182 F.3d 82, 83 (1999). That result would render unconstitutional any search that did not turn up evidence. However, probable cause does require a showing "in some trustworthy fashion the likelihood" that a crime has been committed and evidence of it can be found at a specific location. United States v. Aguirre, 839 F.2d 854, 857-58 (1st Cir. 1988). In this case, the affiant's averments were largely based on hearsay information from a confidential informant (hereinafter "CI") that was not corroborated by the

---

[1] The factual background of the case has been previously relayed to the Court in the defendant's memorandum in support of the motion to suppress, filed on April 11, 2005, and the government's reply, filed on May 9, 2005.

affiant or anyone else. Further, the affidavit targets a location that the defendant was known to frequent but which had an insufficient nexus to the alleged offense and at which the defendant did not reside.

The CI claimed to the affiant that the defendant sold drugs "out of 132 Van Buren Street...at night," Affidavit of ATF Agent Schaefer, (hereinafter "Aff."), ¶ 8, as well as "in the vicinity of 132 Van Buren Street, where [the defendant sells drugs] late at night." Id. ¶ 20. The references – "out of" and "in the vicinity of," read together hardly establish probable cause that drugs or drug-related evidence were within an apartment at 132 Van Buren Street. At best, these allegations, particularly where an actual sale occurred nearby in the Presidential Heights Housing Project at 120 Van Buren Street, and perhaps nearby in the project at 131 Fillmore Street, imply that the defendant sold drugs from that general area. The affidavit states no basis for probable cause to believe contraband would be found at 132 Van Buren Street, such as an indication that the CI had been inside an apartment at that address, or that any of the controlled buys were conducted at night. In fact, affiant states no personal observation of any evening or late-night activity of any kind by the defendant.

As articulated in defendant's initial memorandum, the affidavit gives no indication:

a)   What time the alleged buy took place, *i.e.*, if it was at night and consistent with the CI's assertions;

b)   How long the defendant had been inside the address; or,

c)   How long agents had been in place observing the location, in order to reasonably conclude that the defendant could not have obtained the drugs shortly beforehand at another address, such as, e.g., 120 Van Buren Street or 131 Fillmore Street.

Memorandum of Law in Support of Defendant's Motion to Suppress Evidence from Illegal Search, at 3.  The government's reply, like the affidavit before it, failed to address or even acknowledge these issues, which bear on the defendant's assertions regarding the CI's reliability and the affidavit's validity.  Significantly, the CI allegedly purchased drugs from the defendant somewhere outside of 132 Van Buren Street, see Aff, ¶ 20, and not "at 132 Van Buren Street," as the government claimed,  Gov. Mem. at 8.  Nor, contrary to the government's claim, does the affidavit contain "direct evidence of drug dealing from the search premises."  Id.  The CI did not state he had ever been inside the apartment, much less at night or late at night.  None of the transactions involve the CI going inside the address, nor meeting with the defendant on the street and then waiting while the defendant went inside 132 Van Buren Street to retrieve drugs for the sale.  In fact, the affidavit reads that on June 16, 2004, the CI was waiting for the defendant "in the vicinity of 132 Van Buren Street, where the CI indicates McNickles deals crack late at night."  Aff., ¶ 20.  The "vicinity" is an exceptionally vague reference and could reasonably be read to mean anywhere in the immediate neighborhood, including 120 Van Buren Street or 131 Fillmore Street.[2]  Cf.  United States v. Khounsavanh, 113 F.3d 279, 285-86 (1st Cir. 1997) (in which the court found a substantial basis that drugs were located inside a specific apartment after an informant told police that drugs were sold and stored there, offered to make a controlled purchase there, and after being searched by police went inside the apartment without drugs but

---

[2] The only other mention of 132 Van Buren Street in this case is on May 27, 2004.  See Aff., ¶ 17.  After arranging by telephone to meet the defendant, the CI stated that he first saw the defendant leave 132 Van Buren Street, but then go to 120 Van Buren Street before meeting the CI at 131 Fillmore Street.  Id.  The clear inference is that anything the defendant allegedly sold the CI on that date was retrieved at 120 Van Buren Street, not 131.  As stated infra, the affidavit gave no indication as to how far these addresses are located from each other.

emerged minutes later with crack cocaine).

It should be noted that the court in Khounsavanh rejected the government's argument that the observations of the affiant, an experienced law enforcement officer, should per se constitute probable cause, holding instead that a "probable cause determination is fundamentally a fact-specific inquiry." Khounsavanh, 113 F.3d at 285. The courts give weight to the experience and training of the law enforcement officer applying for the warrant, but as Khounsavanh indicates, not disproportionate weight. See generally, id. The government in the present case cited the affiant's "general training and experience in drug cases," Gov. Mem., at 3, and stated that the court found her "observations...relevant to the probable cause determination." Id., at 8-9. These observations included a lengthy list of drug trafficking actions, see Aff., ¶ 21, which in part could apply to the lowest level street dealer and in full would only apply to a drug kingpin running an international operation.[3] Of import herein, except for subsection (a), regarding the use of "stash houses," id., none of the "observations" listed therein existed in this case, and even if they did they could be found in more than one locale. Again, the affidavit did not establish a nexus to the specific locale at issue, 132 Van Buren Street.

The government claims that the affiant corroborated "much of the information provided by the CI. First, the affidavit described the defendant's criminal record." Gov. Mem., at 2. The affiant does not state that the CI informed her of the defendant's criminal record, which she then corroborated. Rather, the affiant inquired into the record on her own. Aff., ¶ 8 ("I have

---

[3] For example, subsection (d) states that drug traffickers commonly have evidence pertaining to "precious metals and gemstones, jewelry...records of real estate transactions...." Aff., ¶ 21. Considering the defendant's socio-economic status – this Court determined him to be indigent – it is uncertain what "precious metals" he would have possessed or "real estate transactions" he would have conducted.

reviewed McNickles's criminal record...."). That the defendant had been convicted five years earlier of a drug charge, or even that similar charges in another case were pending, did not corroborate that the defendant was possessing or selling drugs at the time of the affidavit. The government also stated that the affiant "corroborated" the CI's information "that Leonora McNickles reside[d] at 120 Van Buren Street," and "a woman, Alaina Almeida reside[d] at 132 Van Buren Street." Gov. Mem., at 2. The affiant's confirmation that a woman with the defendant's last name resided at 120 Van Buren Street at best indicates the informant knew where the defendant's sister lived. The fact that the CI said the defendant's unnamed girlfriend lived at 132 Van Buren Street, is simply not corroborated by determining that one Alaina Almeida resided there; there is no indication in the affidavit of any relationship of Almeida to the defendant. Further, women reside in many locations, and "fact-checking" could corroborate that in every case; it does not "corroborate" the CI's trustworthiness and reliability, and provides no meaningful information to establish probable cause to search at a specific locale.[4]

The government relies on Felix to establish a legal nexus between 132 Van Buren Street and the illegal activities alleged against the defendant, but Felix and the cases Felix cites largely support the nexus between drug activities and a suspect's residence, whether any activity occurred there or not:

> The affidavit indicated that Felix resided in apartment #1006 at 401 Cumberland Avenue, Portland. **No other residence or drug-dealing headquarters of his was identified in the affidavit.** It followed that a likely place to seek to find incriminating items would be Feliz's residence. See, e.g., United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986) (stating that "[i]n the case of

---

[4] By this logic, an informant claiming a man lives at 1600 Pennsylvania Avenue in Washington, D.C., would be deemed credible if the affiant investigated and confirmed that the information was true.

5

> drug dealers, evidence is likely to be found where the dealers live"). If he did not maintain his accounts and records, and the presumably large sums of money received in the course of his dealings, at his apartment, where else would he keep them?... In the case of drug peddlers like Feliz, other circuits have upheld searches of the suspect's residence in circumstances somewhat similar to these. See Angulo-Lopez, 791 F.2d at 1399 (holding that direct evidence that contraband or evidence indicating drug trafficking is at a suspect's residence is not essential to establish probable cause); United States v. Thomas, 989 F.2d 1252, 1255 (D.C. Cir. 1993) (per curiam) (observations of drug trafficking occurring away from suspect's residence can provide probable cause for search of house); United States v. Williams, 974 F.2d 480, 482 (4th Cir. 1992) (per curiam) (affidavit establishing that known drug dealer currently resided in motel room held sufficient to establish probable cause that drug paraphernalia would be found in room); United States v. Cruz, 785 F.2d 399, 406 (2d Cir. 1986) (probable cause for search of drug dealer's apartment even though defendant was not seen using apartment). We do not find it unreasonable for the issuing judge in this case to have relied upon her common sense, buttressed by affiant's opinion as a law enforcement officer, that Feliz would be likely to keep proceeds from his drug trafficking and records relating to drug transactions at his apartment.

Feliz, 182 F.3d at 87-90 (footnotes omitted, emphasis added).

In Feliz, as cited above, the suspect was associated with only one address, his residence, and accordingly the affiant requested only that address to be searched. Stated otherwise, the magistrate had reason to believe that probable cause existed with respect to the residence, even thought there was no direct link to it, because no alternative locations existed: "No other residence or drug-dealing headquarters of his was identified in the affidavit." Id. Feliz, by virtue of dealing only with one location, the defendant's residence, is distinguished by its facts.

In the present case, the affidavit targets for search two separate locations within the housing project, 120 and 132 Van Buren Street, and cites a third address, 131 Fillmore Street, as yet another location where drug activity allegedly occurred. See, e.g., Aff., at ¶ 15. ("The CI jogged with McNickles to the other apartment, 131 Fillmore Street, and the purchase of the crack occurred outside that apartment."). There is also no information provided by the affiant

6

regarding the actual distance between the cited addresses, to give the magistrate a clearer picture of how long it may have taken the defendant to go from one address to the other. As the area is clearly identified in the affidavit as a housing project, see, e.g., Aff., ¶ 20, it is reasonable to assume that the addresses are close together and all may even be connected as townhouse-like residences.

Even assuming arguendo the defendant's sister was the renter at the first location and that his girlfriend was the renter at the second, Aff., ¶ 9, it is not dispositive. It may have been reasonable of the magistrate to assume that he frequented both locations as a guest, but again that does not establish probable cause to search. If the government is allowed to search 132 Van Buren Street because it baldly categorizes the address as one of the defendant's "usual places of residence," Gov. Mem., at 9, then probable cause can be established for any premises that a suspect frequents, e.g., the residence of that person's mother, or perhaps even the local Starbucks if that is where a suspect is observed exiting before a drug sale.

**Good Faith Exception**

The government states even if the affidavit lacked probable cause, the good faith exception established in United States v. Leon, 468 U.S. 897 (1984), would nonetheless apply. Gov. Mem., at 9. The good faith exception would not apply, however, where there is an unfounded suggestion that the CI was trustworthy and reliable. United States v. Baxter, 889 F.2d 731, 734 (6th Cir. 1989) (barring the good-faith exception where the affiant suggested the CI was credible and reliable without basis for the implication). As cited in the section above, the affiant's corroboration of the name on the lease at 132 Van Buren Street, or that the defendant had a criminal record, did not bolster the CI's credibility or reliability in any discernable way –

neither does the affiant's statement that the CI's information "provided during the course of the investigation [shows him] to be reliable." Aff., ¶ 7. While a CI's information that led to past convictions could establish reliability, herein the affiant suggests the CI's actions and cooperation within the course of the investigation corroborates his reliability as to all matters in the case, including his uninvestigated and uncorrobrated claims that the defendant sold drugs late at night at 132 Van Buren Street. In other words, the affiant is stating to the magistrate that the CI <u>is reliable because he is reliable</u>, without any explanation. If this kind of circular reasoning sufficed, all that would be required to demonstrate reliability would be to simply aver: "The court should find him reliable because he is reliable." The good faith exception does not pertain herein.

The affidavit's recitation of the CI's lengthy criminal record, Aff., at 7, also undermines the trustworthiness of the information. <u>See</u> <u>United States v. Vigeant</u>, 176 F.3d 565, 573 (1st Cir. 1999) ("First, and most important, [the affiant] neglected to mention the CI's long criminal history, his numerous aliases, his recent plea agreement, and other indicia of his unreliability."). The affidavit fails to state if any other "indicia" of unreliability is present, such as an open criminal case, or perhaps monetary compensation for the information he provided in this case. A payment to the CI, even if it is a common or standard law enforcement practice, at least raises the question that the information not actually corroborated by the affiant, which in this case was plentiful, may have been tainted because it was provided largely for continuing compensation. In light of that concern, if the court does not reject application of the good faith exception articulated above, the defendant requests that the court order the government to provide discovery regarding these issues, in particular the CI's criminal record and what inducements,

promises, and rewards have been issued by the government for the CI's cooperation, before the Court determines the applicability of the Leon good faith exception..

**Conclusion**

WHEREFORE, for the reasons stated above and in his previous motion, this Court should suppress all evidence seized as a result of the search on June 24, 2004, of 132 Van Buren Street. The defendant renews his request for an evidentiary hearing on this motion and reserves the right to supplement the current filings after the hearing.

>                             DUJUANE MCNICKLES
>                             By his attorney,
>
>                             /s/ *John H. Cunha Jr.*
>                             John H. Cunha Jr.
>                             B.B.O. No. 108580
>                             CUNHA & HOLCOMB, P.C.
>                             One State Street, Suite 500
>                             Boston, MA 02109-3507
>                             617-523-4300

Dated: May 26, 2005                    H:\Word\Crim\McNickles\Reply to Government's Opposition to Motion to suppress.wpd