UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES | ) ) ) | |
| v. | ) ) | No. 04-10218-RWZ |
| DUJUANE MCNICKLES | ) ) ) | |

## MOTION FOR DOWNWARD DEPARTURE

The defendant, Dujuane McNickles, moves this Court for a downward departure from the Sentencing Guidelines because his designation in Criminal History Category III overstates the seriousness of his crimes.

## STATEMENT OF THE CASE

On May 30, 2006, McNickles pled guilty to one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). *See* Presentence Report (hereinafter "PSR") ¶ 4. While serving a federal search warrant at McNickles' girlfriend's home on June 24, 2004, law enforcement agents seized 6.57 grams of crack cocaine from a safe. *Id.* ¶ 11. McNickles accepted responsibility for his actions by admitting on the scene and, again, at the change of plea hearing that he owned the crack cocaine. *Id.* ¶ 15.

## THE COURT SHOULD IMPOSE A SENTENCE NO GREATER THAN THE STATUTORY MINIMUM BECAUSE CRIMINAL HISTORY CATEGORY III OVERSTATES THE SERIOUSNESS OF HIS RECORD.

Although the *Booker* Court clarified that the Sentencing Guidelines are advisory, not mandatory, the Guidelines' ranges and provisions are among the relevant factors a court can consider, along with the nature and circumstances of the offense and the history and characteristics of the defendant, in fashioning a sentence that is not longer than necessary to achieve the goals of sentencing. *See* 18 U.S.C. § 3553(a)(1). In the case at bar, McNickles faces

a statutory mandatory minimum sentence of 60 months, pursuant to 21 U.S.C. § 841(b)(1)(B)(iii). However, the applicable guideline range extends beyond 60 months, and a departure is warranted.

The Sentencing Guidelines allow departure when there is reliable evidence that the Criminal History Category (hereinafter "CHC") overstates the seriousness of a defendant's record or the likelihood he will commit further crimes. U.S.S.G. § 4A1.3. Moving the defendant's guideline calculation vertically within a CHC, horizontally to another CHC, or both, is warranted if the category and offense level do not fairly reflect the gravity of the defendant's criminal history. *United States v. Lindia*, 82 F.3d 1154, 1165 (1st Cir. 1996). In the case-at-bar, the PSR assigns McNickles four criminal history points and places him in CHC III, PSR ¶ 35-36, at a total offense level of 23. *Id.* ¶ 28. Taking into account the mandatory minimum, the resulting guideline range is 60-71 months.

CHC III overstates McNickles record, as none of his convictions involve violence, none involved more than a small amount of drugs, and each raised questions to some degree regarding culpability. Two of the three convictions were for possessing a single marijuana cigarette while in the company of another person. The first, for an offense on October 23, 1996, when McNickles was 18, resulted in the matter being continued without a finding. *Id.* ¶ 32.[1] The PSR indicates that when police arrested McNickles and another defendant, Manual Lopes, two open beer bottles and an unlit marijuana cigarette, or "blunt," were found on the ground. *Id.* The police report cited by the PSR indicated that McNickles admitted the marijuana was his. *Id.* The

---

[1] The fact that McNickles was not arraigned until five months later, on March 26, 1997, underscores the minor nature of this incident and the lack of urgency with which it was disposed. The disposition, although diversionary, was counted by the PSR as one point because the defendant admitted to sufficient facts. *See* U.S.S.G. § 4A1.2(f).

second marijuana conviction, for an offense on January 11, 2000, was for a blunt found in the waistband of another defendant, Austin Rebello. *Id.* ¶ 34.  The PSR indicates that McNickles was riding in Rebello's car when police stopped the vehicle after claiming to see the occupants smoking the blunt. *Id.*  As a blunt is a hollowed-out cigar and, therefore, would normally appear to be an ordinary cigar, and police did not report smelling marijuana until they stopped the car and began speaking to Rebello, *id.*, it is unclear whether there was reasonable suspicion to make the stop.  However, the stated disposition, "Guilty, filed," *id.*, implies that the stop was not challenged and that McNickles pled to end the matter.

The date of that disposition, March 17, 2000, was also the same date McNickles pled to possessing cocaine with intent to distribute, a conviction his current counsel has moved to vacate. *See id.* ¶ 33.[2]  On May 4, 1998, four people were arrested, including McNickles, his girlfriend at the time, her sister, and Junior Lopes, when police served a search warrant at Lopes' residence. *Id.*  One police officer claimed that when he entered the apartment, he saw Lopes and McNickles throw contraband to the ground. *Id.*  Counsel has challenged that conviction on the grounds that McNickles received ineffective assistance in the matter from not one but two separate lawyers,[3] neither of whom investigated the case.  Had either attorney done so by, *inter alia,* visiting the scene of the arrest, they would have realized that police could not have seen

---

[2] The New Bedford District Court has yet to act on the motion to vacate, which was filed on June 21, 2005.  The court conducted an evidentiary hearing on various dates from November 1, 2005, to February 9, 2006, and counsel filed a post-hearing memorandum on April 28, 2006.  If the New Bedford court granted the motion, McNickles' would have two less criminal history points, leaving him with two, which would put him at CHC II, level 23, with a sentencing range – adjusted for the mandatory minimum – of 60-63 months.

[3] As explained later in this motion and memorandum, McNickles' first lawyer withdrew at a critical juncture in the case because McNickles could no longer pay his fee.  The lawyer did not tell the court that money was the reason he moved to withdraw.

either defendant throw anything to the ground, because the living room is down a hallway from where police entered, and the couch where the defendants sat was not visible from the hallway.[4] Further, only one police officer claimed seeing both men throw contraband to the ground – a second officer filed a report stating that he saw only Lopes discarding contraband. The attorneys adopted the first officer's version of the facts, depriving McNickles of a substantial and available grounds of defense. Further, neither attorney gave McNickles a copy of his discovery, depriving him of a chance to see for himself the actual state of the evidence against him.

    Also, McNickles' first lawyer jointly represented the two women arrested with McNickles, and did so without McNickles' knowledge. The attorney not only failed to inform all the parties of the joint representation, but also failed to appreciate for himself the actual conflict of interest the joint representation raised. He was able to get the women's cases dismissed when he convinced the court that the women were in the wrong place at the wrong time, a defense he did not offer for McNickles, subtly implying that McNickles was not innocent. The attorney was in the midst of negotiating a plea bargain when McNickles told him he could no longer afford to pay his fee. The attorney then withdrew, telling the court only that he and his client had reached "an impasse." At that point, the deal on the table from the prosecution was for McNickles to plead to possessing cocaine with intent to distribute, for which he would receive a one year split sentence, but with only 59 days to serve. However, the first attorney only told McNickles that the deal was for a 59-day sentence; he did not advise McNickles as to the true sentence or the serious nature of that remaining count. He also said that if the deal was turned down, McNickles risked going to trial for trafficking, a count for which he

---

[4] The police did not enter silently or secretly – they forced the back door open and loudly announced their presence before proceeding down the hallway to the living room.

could serve two years if convicted by a jury. After the second lawyer was appointed, he did not pursue any further negotiations. Essentially, he did nothing on the case but sit with McNickles at the change of plea hearing and sentencing.[5]

The facts may be disputed but McNickles' plea in that case, as well as his plea in the marijuana cases, clearly resulted from his desire to have the matter resolved as quickly as possible with the least severe consequence. Unlike the present case, for which he has admitted guilt and accepted responsibility, there is strong evidence that he was not culpable in the 1998 case, and that he pled because of bad and ineffective advice from counsel and because of fear of a worse punishment if he took his chances at trial. The resulting conviction on McNickles' record, which has placed him in CHC III, overstates the seriousness of the matter and his involvement in it. McNickles requests that this Court consider these circumstances when formulating his sentence in the present case.

## **CONCLUSION**

The Court has the discretion to fashion an appropriate sentence that is "sufficient, but not greater than necessary" to achieve the goals of sentencing. 18 U.S.C. § 3553(a). McNickles is set to receive a statutory minimum sentence of 60 months for the present offense. Any sentence above that, even though such as sentence may still be within the guideline range of 60 to 71 months, would be greater than necessary because CHC III overstates the seriousness of McNickles's actual criminal record. McNickles asks the court to depart to CHC I, with a

---

[5] Whether the second attorney had ever met with McNickles prior to the plea hearing and sentencing on March 17, 2000, was disputed. McNickles claimed he never met the man until it was time to go before the judge. The attorney countered that claim at the hearing on the motion to vacate, by presenting evidence he billed the Commonwealth of Massachusetts Committee for Public Counsel Services for a client consultation with McNickles a month before the sentencing, but he could not remember any details about it, and neither he nor McNickles recognized each other at the hearing.

guideline range of 46-57 months, and sentence him to the statutory minimum mandatory sentence

DUJUANE MCNICKLES
By his attorney,

/s/ *John H. Cunha Jr.*

John H. Cunha Jr.
B.B.O. No. 108580
CUNHA & HOLCOMB, P.C.
One State Street, Suite 500
Boston, MA 02109-3507
617-523-4300

Dated: August 1, 2006

H:\Word\Crim\McNickles\Motion for Departure.wpd

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served via electronic filing upon AUSA John A. Capin, U.S. Attorney's Office, 1 Courthouse Way, Boston, MA 02210.

/s/ *John H. Cunha Jr.*

John H. Cunha Jr.